The court will proceed to the case of Gustafson v. Adkins. Mr. Tanner. Thank you, Judge Plowman. Good morning. May it please the court, counsel, detective William Adkins should be no longer a party to this case that was filed in 2011 for two key reasons, each of which breaks down into a couple of subparts, but fundamentally because he's entitled to qualified immunity in light of the lack of clearly established legal authority that would make clear to someone that what he's accused of doing would be a constitutional violation and also because Congress has established not one but two comprehensive remedial schemes that would cover the types of misbehavior that the plaintiff, Rene Gustafson, is complaining of. If I can first approach the qualified immunity issue, it's very clear that it is a plaintiff's burden when qualified establishing that the right alleged to have been violated would be violated by the conducted issue. Mr. Manchepinto was a very good friend of mine and a very fine lawyer and at this stage still we don't have a single case from the Supreme Court or from any U.S. Court of Appeals that actually finds that something that went on in a federal workplace was a violation of the task that's set forth in O'Connor. It's probably because it's so obviously outrageous that any reasonable officer would know that he cannot install a surveillance camera in an office where female officers change their clothes. I don't think we need a case to and if it's flagrantly unconstitutional there doesn't need to be a case on point. The officer can't use the workplace to be a voyeur on female officers. Your Honor, there has never been an allegation, never, that Detective Adkins was a voyeur. There's never been an allegation that he viewed anything that was picked up by the camera. This is summary judgment. It is. The allegation is that that's the ostensible rationale that they were trying to catch officers who were sleeping on the job was entirely pretextual and that your client knew it. Your Honor, it has never been pled. It doesn't need to be pled, that's the theory of the case. You don't have to plead a theory of the case, you just have to argue the theory of the case and that's what this case is all about. Whether he and his superior officer who ordered him to put in the camera knew that this was flagrantly unconstitutional because this office was used by female officers to change their clothes. So in the absence of an allegation that my client never saw anything, in the absence of any allegations... He doesn't need to be the voyeur. That's clear. You know, he put the camera in knowing that this office was used by female officers to change their clothes. He, in fact, consulted with folks in the legal department who told him it's illegal and he did it anyway. That's what we've got here. This is not a case for qualified immunity. It seems to me that if we're going to deny qualified immunity on things that aren't alleged and as to which there's no evidence, then I'm a little bit at sea here. I should address, since I can obviously tell where Your Honor is going on this one, the sort of subsidiary issue in terms of the factual background in terms of whether Detective Adkins had any awareness that this office, which it is conceded was an actual office. He says he didn't have that awareness. The plaintiff argues and has some evidence to support the fact that everybody knew that this office was used for the female officers to change their clothes because there was no other place for them to do it, at the very least, but also by long practice and experience. Well, there's a big difference between argument and evidence and I would submit that there is no evidence. She's going to testify to that effect. So we've got a clear dispute of fact on that. We don't review disputes of fact on qualified immunity claims. The question is, accepting her version of the facts, which we must do, is that a constitutional violation clearly established? Your Honor, Ms. Gustafson's affidavit was made without foundation. It does not say... How long has she been in the department? How long has Ms. Gustafson been in the department? I don't know on the subject. She's a long-standing member of the department, right? She has... the foundation is there for her to testify about what the practices were. But I don't think she has the foundation... And you may have a jury question, but you don't win qualified immunity if it's a reasonable inference to draw that he knew, because everybody knew. Because everybody knew. Frankly, Your Honor, I don't think there's evidence that everybody knew. I know there were some statements by some people that it was common knowledge, but just because something is described as common knowledge... That's a jury question. You can stand up in front of a jury and make that argument. That's not a good legal argument on qualified immunity. What I feel is a good legal argument is that when Ms. Gustafson filled out an affidavit saying he saw, we don't know when, we don't know how she knows, she literally doesn't say that she's stating it on her own. You can cross-examine her on the stand. Okay, and so my legal argument before this court is that for a witness to put forth... to create a factual issue through an affidavit, that witness needs to have foundation, and Ms. Gustafson did not. She makes a statement without any basis for anybody understanding how she would know this and how she would have seen this. If she had submitted an affidavit that said, on one or more occasions, I sat there and watched as Detective Adkins watched somebody go in and come out in a different state of dress, that would be a hundred miles from where we are right now, but we're not. She doesn't explain how she knows what she's saying. That means there's no foundation, and if there's no foundation, that doesn't create a genuine issue of fact, and it's not a thing that I should have to stand in front of a jury for, and it's not a thing that Detective Adkins should have to stand trial for. I know that ordinarily fact questions don't come into play on a qualified immunity review by this court, but under the authority of Scott v. Harris, where the Supreme Court took a look at the piece of evidence and said, no way could anybody conclude that what the testimony is... It was a videotape. It was a videotape. You're asking us to resolve a factual dispute. I'm asking you to not participate in a visible fiction, which is what the videotape was, and which is what an affidavit that doesn't provide any basis for what's said in it, any foundation for what's said in it, should not be enough to create a factual issue to defeat summary judgment. If she had that information, it would have been plenty easy to put into the affidavit, and she didn't, and qualified immunity, as you know, is immunity not simply from judgment or from a damaged judgment, but also from the rigors of standing trial, of having to participate in discovery, and we respectfully submit that it should have been granted here because there is no evidence, no proper evidence to support any claim that my client was aware of the use of this active office, active co-ed office, for changing clothes by anybody. Well, that's all that's for us is that there's some purpose of putting this hidden camera up is to determine whether people are actually sleeping on the job. Is that ostensibly what this is going to... That is the allegation of what the chief told my client, Detective Adkins. And then Adkins checks with someone else and they say, oh, you really can't do that. I assume looking at it, it's some sort of a search. What was the reason someone told him he couldn't do that? Really all I know is what you know, Judge, in terms of what's in the record. So somebody from a supervisory office, it is alleged, told him that it would be improper to put the camera here and that... And there seems to be some question about whether the chief had authority, and it's alleged that my client went back to the chief and said, do you have the authority? And the allegation is that the chief said, don't worry about it, just put the camera in, which I'm sure you could take in probably a couple of different ways. Yeah, the chief isn't here. Right, he's not. And I'd like to stress the fact that my client was not the supervisor or plaintiff. My client was not the decision maker here. My client was an underling to both of these people. So if the chief was engaging in voyeurism, it's shameful. But it's not something... It's not alleged that my client knew that. While I do allege that the chief's stated reason was protectual, there's no allegation that my client understood the stated reason. This was up for about two years, wasn't it? I think that's the allegation. But I don't know how long it was actually active. I don't either, because it's weird. I think at some point, my recollection is that at some point they were doing renovations or something on the office and somebody discovered that this was up here. I have no idea whether it was actually... I assume that if it goes to the trial, that would be a question. First of all, did it even work? I think that would be a very big question. And then nobody seems to have complained about having been exposed. Usually that was when we get around, I guess. This is very bizarre. And maybe it's too early to stage. It seems to me this is... You know, when you're talking about a, I guess a good label, a stripped search, before you're talking about the Fourth Amendment, as opposed to if it really were just to check on and see if somebody's sleeping, I wonder if that alone was something that someone could challenge. And I guess it certainly raises the question whether that would justify installing a hidden camera. No, not justifying. I mean, just to detect if somebody is sleeping. It doesn't matter. We had a prison case sometime not too long ago. Yeah, people were... The night shift at the prison was... They were doing bad things. But the question here is whether there is... There would be a search, if you take the voyeurism out of it, and somebody's caught sleeping. The challenge is being fired to say, hey, that was an illegal search. So, I see your point. It seems to me it's a... It seems to me that a hidden camera is a search. A hidden camera in a place where nobody would expect it to be is a search. The tougher question, I think... So if somebody is caught sleeping and gets fired, he would have a challenge then? Well, because it's a search doesn't necessarily mean that it was an unlawful search. And that's where I come to the point that... One without a warrant and all that stuff. Right. So then we look at the O'Connor test as adopted and interpreted by this court subsequently. And we'd say, is there... So was this... Was there a valid reason for this? A reasonable justification? Was the method used reasonably well tailored to what it was that you're trying to address? But again, those are the sorts of things that you can't find any case law on. Respectfully, Judge Sykes, I understand what you're saying. I'm not going to stand here like I don't. And we completely disregard the pretextual reason for purposes of evaluating qualified immunity because we have to accept the plaintiff's version of the facts. But the thing is, Your Honor... Accepting the plaintiff's version of the facts, there was no workplace justification for this. Take that completely off the table. But that applies to the chief, Your Honor. It's the chief who's alleged to have given a pretextual basis. Right. And the argument is that everybody knew this was a changing area, including your client, and that your client must have, if he was a thinking person, realized that putting a hidden camera in a female locker room essentially is unconstitutional, regardless of the reason stated by the chief. It is argued, you are correct, it is argued that he was aware... Right. And that record allows that argument to be inferred based on the record that I see. Okay. Well, you've got the robe, and they haven't given me one yet, so I'll carry on. We have a Bivens argument. Yes, we do have the Bivens argument. Maybe I should move to that. Well, I have a question about that, too. Certainly. Why are we arguing about whether this claim is cognizable under Bivens? Because Bivens itself was a Fourth Amendment claim. This is a Fourth Amendment claim. End of inquiry. We don't have to go through the Wilkie two-step analysis, because this is just like Bivens. This is a Fourth Amendment claim for an unlawful search. So the Supreme Court has already authorized Fourth Amendment claims. Well, not in the context of a federal workplace investigation, and that's the only point I raise this for, is that Congress has   So, why does that make a difference? If the Fourth Amendment implicitly authorizes a claim by persons, a damages claim by persons who are the victim of Fourth Amendment violations by federal officers, that's the holding of Bivens. Yes. Why do we have to go any further? Because it's different when you're in the federal Supreme Court said that a damages claim is authorized for Fourth Amendment violations. That doesn't matter. Bivens is a judicially created remedy, and the Supreme Court and this Court have recognized that there are times when a Bivens action should not be extended. This is not a case about extending Bivens to an Eighth Amendment context, to a due process context, to a First Amendment context. This is the Fourth Amendment. And it's the same Fourth Amendment whether it applies in the workplace or in interactions between citizens on the street and law enforcement officers. It's actually not the same, Your Honor. Citizens on the street and law enforcement officers are generally governed by probable cause. Searches in the workplace are governed by the The legal standard may differ, but it's the same Fourth Amendment, it's the same reasonableness requirement. And if the cause of action is implicit in the Fourth Amendment, it seems to me that resolves the case. Your Honor, the case law providing that there are times when courts should not recognize Bivens actions Outside of the Fourth Amendment. The Supreme Court has never said within the Fourth Amendment, we're going to have these different gradations. I don't know that they've gone amendment by amendment, Your Honor. But no, the only time The fact of the matter is, the point behind this whole line of cases, you know, fight versus ward, all of the cases that that comes from, is that when you're in the federal workplace and you have a congressionally created comprehensive remedial scheme for certain types of things, we are not going to extend a Bivens action into the federal workplace scenario. Into new contexts, in other words to imply a private right of action under the First Amendment or imply a private right of action under the Eighth Amendment or under the Due Process Clause or the Equal Protection Component of the Due Process Clause of the Fifth Amendment. But if we're in the domain of the Fourth Amendment, it seems to me Bivens is implicated and the end of inquiry. I respectfully think that's incorrect, Your Honor, and that in fact the reason this whole line of cases exists is not because which amendment are we looking at and exactly which rights are we talking about. We're looking at whether the judiciary should infer or create a cause of action when Congress has created a comprehensive remedial scheme. And the Supreme Court has already answered that question for Fourth Amendment claims. On Bivens? Yes. But Bivens is not a federal workplace case. It doesn't matter. I believe it does, Your Honor. I think that's the whole point of this line of cases is that when we're looking at the federal workplace, the courts are not to infer and create a judicially created remedy when Congress What's your best case for that? Your Honor, this is the first time anybody's ever raised the notion that it shouldn't be Bivens. Fight versus Ward. Fight versus Ward. Any of the Supreme Court cases that talk about this, they don't talk about which amendment it is or whether it's the same. Well, of course they do. They talk about whether Bivens should be extended to an Eighth Amendment claim or Bivens should be extended to a First Amendment claim. That was Bush. Or whether Bivens should be extended to a due process claim under the Fifth Amendment. They don't talk about I read those cases as saying not that we're going to look at which prong, which amendment of the Constitution, or which constitutional right that we're going to look at whether there should be a judicially created remedy for constitutional violations in the federal workplace in light of whether there's been a comprehensive remedial scheme in place. Well, this Court has never said that. Nor do I believe they've ever said, nor has this Court ever said what Your Honor is suggesting, which is that for Fourth Amendment Sure, all of our cases talk about whether Bivens should be extended to a new context. Fifth Amendment, First Amendment, Eighth Amendment and the Fourth Amendment question has already been decided. That's Bivens itself. Okay, well I guess we have a fundamental disagreement on the nature of the Bush inquiry. It's our position that a Bivens remedy will not be extended to the federal employment context when there's a comprehensive remedial scheme. And since there are two such schemes here, we would argue that the case should have been dismissed. And we ask the judgment below be reversed. Thank you, Your Honor. Thank you, Mr. Tanner. Mr. Massi Capinto. May it please the Court, Counsel. I guess I want to just briefly address some of the points. I won't belabor it. On Counsel's position that reversal is necessary because there was a failure to establish clearly established law for which a reasonable police officer would have known that he was violating. I obviously agree with Judge Sykes that it is self-evident. It is obvious. The case law is very clear. You don't need an exact case that finds the precise conduct to be violative of a constitutional right in order to prove the standard. But clearly in our position, the contours and the requirements of the Fourth Amendment in this precise context were abundantly clear to Detective Atkins at the time. And that comes from the Supreme Court's decision in O'Connor. It comes from this Court's adoption of O'Connor in Shields and Fernandez. And it couldn't be more clear what these courts have said about this precise issue. That there is a privacy right in your office and in your desk if you're a governmental employee. It is subject to a reasonableness test on a case-by-case basis. And then further to explain to Detective Atkins what he needs to do to comply with the law, the courts have been very clear about the two-pronged reasonableness test that would apply to this precise conduct. Any search of the office has to be reasonable and justified upon its inception. And then the second prong is the scope of the actual search must be reasonable given the alleged initial justification and not excessively intrusive. You couldn't have a better analytical framework for an officer to understand that he's violating the law when he goes and puts a covert surveillance camera in an office where he can't. I would submit to Your Honor, even if he didn't know, even if it was to catch someone sleeping, this violates the O'Connor test as well. That's the key as far as I'm concerned. If somebody gets fired because they were sleeping, that's a big challenge. Especially in this case. In this case Detective Atkins goes to the OIG and the deputy chief and says, can I put a covert surveillance camera in an office? And they say, no, you can't. It's illegal. You can't do it for any reason. Well, right away it's not justified at its inception. Whether it's for sleeping or other purposes. We would submit that Judge Lee got it right, that there was clearly established requirements of the Fourth Amendment in this precise context that would provide Detective Atkins reasonable notice that what he was doing violated the Fourth Amendment. Counsel raises this factual dispute. Did he know whether it was used as a changing room? Did he not? Again, I agree. The case law is very clear that the appellate court doesn't handle factual disputes with respect to qualified immunity decisions. There seems to be a tiny, tiny exception with respect to Harris. This isn't Harris. Harris was just the extreme case where there was a videotape that clearly proved that no reasonable jury could find otherwise. And this is not a Harris case by any stretch. It's not a Harris case because Lieutenant Gustafson had an affidavit. In that affidavit, she did say two things. She said it was common knowledge that this office was used as a changing room. Why? Because there wasn't a changing room for female officers at the time. There was no locker room. And also that she personally observed, she observed the chief and Detective Atkins see her and another female officer go into that office in casual clothes and leave in a uniform. That was sufficient in and of itself to do what the court said, Judge Lee said, was a he-said-she-said. It's prototypical. I'm not going to get involved in the factual dispute. Let the jury decide. But there was also additional evidence that was never disputed. Common knowledge, which was from an excerpt of a VA investigative report, where someone else, not my client, female officer who changed in that room said she was very upset by this because everybody knew, or it was common knowledge that female officers changed in that office. What's your response to the argument about no foundation? The no foundation argument is limited to my client's affidavit and it's only limited to the precise affidavit statement that she observed them see her and another officer go into the office. And I think what Mr. Tanner is arguing is that it wasn't precise enough in terms of when that occurred, how many times that occurred, that she personally observed it. Is that a legal requirement? The admissibility of that testimony? I don't believe so, Judge. Not in this context. No. I think, and Judge Lee said, he read this, again especially when you're taking all reasonable inferences in favor of the non-moving party, that sufficed under the law. With respect to this other issue of Bivens, is Bivens precluded? I don't know that, again, I do agree that it is the Fourth Amendment. It has been established and therefore there's probably no reason to engage in this analysis under those two statutes, but I will just rely on our briefs. Those two statutes do not preclude a Bivens case. One is clearly for personnel actions, adverse personnel actions. Being the victim of a covert recording  adverse personnel action, like a demotion, a reassignment. That's the Civil Rights Act. The other statute, the Federal Employees Compensation Act, that's a workers' compensation statute and that's only against the United States. It doesn't apply to private causes of action against Bivens defendants. For all those reasons, unless there's any further questions, we would ask that the court affirm the district court and allow discovery to proceed in a determination on the merits. Thank you. Thank you, counsel. Senator, your time has expired, but you may have two minutes. Thank you very much, Your Honor. Judge Sikes, you asked me my best case and I never gave it to you, so I took the opportunity to find them. The Saul case from the Ninth Circuit was a Fourth Amendment case. It was an employee who alleged that his mail had been, his personal mail had been opened in the office. Right. No, I'm familiar with that case, but the court didn't really analyze this antecedent question about whether this constitutes an extension and it kept talking about that is an extension of Bivens beyond the Fourth Amendment context because the claim there was a Fourth Amendment claim. And so it seems to me that the question I'm raising simply was not addressed. They just plowed ahead and engaged in the analysis. So I don't find the case persuasive on that score and the court also talked about it in terms of CSRA preclusion. And this is not a preclusion question as in preemption or whether there's a scheme in place that would suggest that a Bivens remedy is inappropriate. The Hill case out of the Tenth Circuit was also a Fourth Amendment case that we cite on page 16 of our principal brief. That's unpublished, I think, right? No, it's a published case. Is it a published case? Yes. If it's not, I missed it. No, it is because I've got the page cite to it, so it's a published case. There's also one district court case. That Ninth Circuit case, that was undisputed. There was a dealing with routine mail handling, right? From a fact, I understand it's a different case, the Ninth Circuit case. But it's hard to compare it with the installation of the camera. I agree that they're very different situations, however it was a Fourth Amendment claim that was alleged and it was found that it would not lie because Bivens couldn't be extended there. The one factual thing I would raise is that and I will go to my grave on this one, Ms. Gustafson's affidavit does not say that she observed this. It just does not say it. It's in the appendix. It's easy to find. She simply doesn't say that she observed it. If you want to say I've got enough evidence, any kind of evidence to get me over the hump to defeat a qualified immunity summary judgment, fine, but then do it. You still have to meet basic foundational requirements and she does not do so. I appreciate your time. Thank you, Your Honor. Thank you to both counsel. The case is taken under advisement.